# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

JACK ESPINO,
Defendant and Appellant.

S286987

Sixth Appellate District
H051258

Santa Clara County Superior Court
C1761121

July 2, 2026

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Evans, and Do[*] concurred.

---

[*]     Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. ESPINO
S286987


Opinion of the Court by Kruger, J.


Penal Code section 1172.75 invalidates most prior prison term sentence enhancements that were "imposed" before the legislation took effect. (Pen. Code, § 1172.75, subd. (a) (section 1172.75(a).) A person who is "currently serving a term for a judgment that includes" such an enhancement is entitled to resentencing. (*Id*., § 1172.75, subd. (b).)

We held in *People v. Rhodius* (2025) 17 Cal.5th 1050 (*Rhodius*) that such an enhancement was "imposed" even though the enhancement was stayed rather than executed. The question in this case is whether an enhancement was "imposed" even though the sentencing court struck the punishment for the enhancement. The answer is yes.

## I.

### A.

We provided a detailed overview of the relevant legal background in *Rhodius*. (See *Rhodius*, *supra*, 17 Cal.5th at pp. 1053–1055.) Briefly: Before the year 2020, former section 667.5 of the Penal Code (section 667.5) "instructed criminal sentencing courts to 'impose a one-year term for each prior separate prison term or county jail term' the defendant had previously served for a felony." (*Rhodius*, at p. 1053.) "[I]n an effort to reduce the societal and fiscal burdens of incarceration," the Legislature amended the Penal Code to eliminate these enhancements, except in cases involving prior terms for sexually

1

violent offenses. (*Id.* at p. 1054.) It later made these changes retroactive. (*Ibid.*) The operative provision states, as pertinent here, that "[a]ny sentence enhancement that was *imposed* prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5 . . . is legally invalid." (§ 1172.75(a), italics added.)

"A defendant serving a term for a judgment that includes a now-invalid enhancement is entitled to resentencing." (*Rhodius, supra,* 17 Cal.5th at p. 1055; but see Pen. Code, § 1172.75, subd. (f) [exception].) That resentencing must be a "full" resentencing, at which the trial court must "consider a broad range of factors . . . , including 'changes in law that reduce sentences' [citation] and postconviction factors that inure in the defendant's favor." (*Rhodius,* at p. 1065; see Pen. Code, § 1172.75, subd. (d).) The resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (Pen. Code, § 1172.75, subd. (d)(1) (section 1172.75(d)(1)).) Regardless, the resentencing "shall not result in a longer sentence than the one originally imposed." (*Ibid.*)

## B.

Defendant Jack Espino was charged with several robberies and related offenses. The charging document alleged that he had previously served a prison term, citing former section 667.5, subdivision (b) (section 667.5(b)). Espino pleaded no contest, admitting the truth of the prior prison term allegation. At sentencing in 2017, the trial court exercised its discretion to strike the punishment associated with that allegation in furtherance of justice, but the court did not strike

the allegation itself.  (See Pen. Code, § 1385, former subd. (c)(1), added by Stats. 2014, ch. 137, § 1 ["If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice"].)  The abstract of judgment reflects that the court found the allegation to be true.

After section 1172.75(a) took effect, Espino petitioned the superior court to recall his sentence and conduct a full resentencing hearing.  The court denied the petition, concluding that "section 1172.75 applies to persons for whom a section 667.5(b) enhancement was imposed *and executed*," not to those for whom the "enhancement was stayed, stricken[,] or dismissed."  (Italics added.)  Espino appealed, and a divided panel of the Court of Appeal reversed.  The majority held that "section 1172.75 should be interpreted to apply whenever a prison prior was imposed, whether punishment was executed, stayed, or struck."  (*People v. Espino* (2024) 104 Cal.App.5th 188, 193.)  The dissent, by contrast, concluded that a punishment-stricken enhancement is not "imposed" (§ 1172.75(a)) because it cannot lengthen a defendant's sentence.  (See *Espino*, at pp. 202–206 (dis. opn. of Lie, J.).)

We granted the People's petition for review, deferring briefing pending our disposition of *Rhodius*, *supra*, 17 Cal.5th 1050.  After our decision in *Rhodius* became final, we ordered the parties in this case to brief a question that *Rhodius* did not squarely present or address:  Whether section 1172.75(a)

renders invalid a prior prison term enhancement for which punishment was stricken. (See *Rhodius*, at p. 1066, fn. 2.)[1]

## II.

The question presented is one of statutory interpretation, which familiar principles help us to resolve. We begin with the statutory text, giving the language its usual and ordinary meaning. If the text is ambiguous, we may consider extrinsic aids, including legislative history. (See *Rhodius*, *supra*, 17 Cal.5th at p. 1057.) Our decision in *Rhodius* guides our inquiry, as *Rhodius* applied those same principles to the same statutory text.

## A.

The *Rhodius* case concerned a defendant whose prior prison term enhancement had been stayed. (*Rhodius*, *supra*, 17 Cal.5th at p. 1056.) To determine whether a stayed enhancement had been "imposed" in the relevant sense (§ 1172.75(a)), we first considered the ordinary meaning of that term. We concluded that, "as a matter of ordinary usage, an enhancement is 'imposed' when it is made part of a legally effective order." (*Rhodius*, at p. 1058.) The primary question in dispute was whether the Legislature had instead used "imposed" as a " 'shorthand' " to capture only enhancements that were both imposed and executed as part of the sentence. (*Id*. at pp. 1059–1060.) After reviewing the language, structure, and history of the statute, we concluded that the Legislature did

---

[1] Our decision in *Rhodius* also left open whether a prior prison term enhancement is "imposed" (§ 1172.75(a)) "when an enhancement, not just its associated punishment, [is] stricken" (*Rhodius*, *supra*, 17 Cal.5th at p. 1066, fn. 2). As that question is not at issue in this case, we do not address it.

not use the term "imposed" in this narrower sense; rather, it intended broadly to invalidate prior prison term enhancements that had been included in the defendant's judgment, regardless of whether the enhancement had been executed. (*Id.* at pp. 1060–1067.)

The Attorney General's primary argument to the contrary was based on the relationship between section 1172.75(a) (which invalidates certain "imposed" enhancements) and section 1172.75(d)(1) (which addresses resentencing for defendants subject to an invalid enhancement). As mentioned, section 1172.75(d)(1) requires that resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75(d)(1).) The Attorney General argued that "if subdivision (d)(1) prescribes a 'lesser sentence' as the usual remedy for the inclusion of an invalid enhancement, that must mean that 'the repealed enhancement increased the length of the sentence' — a result that is possible only if the repealed enhancement had been 'imposed and executed' rather than imposed and stayed." (*Rhodius*, *supra*, 17 Cal.5th at p. 1060.)

Disagreeing, we explained that the phrase "lesser sentence" need not refer to a shorter sentence; rather, it can be understood to mean that the new sentence must eliminate whatever adverse effects flow from the now-invalid prior prison term enhancement, even if those effects do not take the form of a longer term of imprisonment. (*Rhodius*, *supra*, 17 Cal.5th at p. 1060.) The effect of staying an enhancement, we explained, is "to prevent execution of the enhancement, but 'preserv[e] the

possibility of imposition of the stayed portion should a reversal on appeal reduce the unstayed portion of the sentence.' " (*Id.* at p. 1056.) Invalidating a stayed enhancement eliminates that possibility and is thus a "lesser sentence" in the relevant sense. (*Ibid.*)

We also rejected the argument for a "more fundamental[]" reason. (*Rhodius*, *supra*, 17 Cal.5th at p. 1061.) Unlike section 1172.75(d)(1), on which the Attorney General relied, section 1172.75(a) "is not about resentencing." (*Rhodius*, at p. 1061.) "Rather, it specifies which enhancements are now 'legally invalid' following the Legislature's retroactive repeal of prior-prison-term enhancements for most offenders. [Citation.] The statute's resentencing procedures follow inexorably from invalidity, not the other way around." (*Id.* at pp. 1061–1062.) Accordingly, "the question before us" was "whether the Legislature intended for some category of previously imposed section 667.5(b) enhancements to remain valid under section 1172.75 — notwithstanding its declaration that enhancements imposed prior to January 1, 2020, are, generally speaking, now invalid — because the enhancements were stayed rather than executed." (*Id.* at p. 1062.) "We consider[ed] it unlikely that this is how the Legislature intended for the retroactive invalidation of section 667.5(b) enhancements to operate." (*Ibid.*)

To this point, the Attorney General argued that "the Legislature may have seen no need to retroactively invalidate stayed enhancements" because it "reasonably anticipated that if the defendant's sentence were reopened for other reasons, a court could not order the execution of a previously stayed section 667.5(b) enhancement without running afoul of" 2019 legislation that prospectively eliminated most prior prison term

enhancements. (*Rhodius*, *supra*, 17 Cal.5th at p. 1062.) We acknowledged that this "theory is not implausible." (*Ibid*.) "But if it was the Legislature's intent to defer the invalidation and reexamination of stayed section 667.5(b) enhancements," we continued, "we expect that it would have put the matter more plainly." (*Rhodius*, at p. 1062.) We emphasized that section 1172.75(a) contains broad language — invalidating " '[*a*]*ny* sentence enhancement that was imposed prior to January 1, 2020' " — and that the Legislature was presumably aware, when it adopted that broad language, "that courts had sometimes stayed section 667.5(b) enhancements in the years before" that 2019 legislation took effect. (*Rhodius*, at p. 1062.) Given that "the statute's broad statement of legal invalidity makes no mention of stayed enhancements," we saw "no sound basis to conclude that the Legislature intended to exempt stayed enhancements from prompt invalidation and reexamination, instead choosing to put those matters off for another day." (*Id.* at p. 1063.)

Finally, to the extent any doubt remained, we observed that the legislative history revealed an intent "not only to reduce incarceration" — which might have suggested a narrow focus on sentence enhancements that had been executed — but also more broadly to rectify what the Legislature perceived as an essential unfairness in the system of prior prison term enhancements. (*Rhodius*, *supra*, 17 Cal.5th at p. 1065.) We explained that the Legislature enacted section 1172.75(a) because it considered it generally unjust to impose an enhancement based on the defendant's prior punishment for a different crime. And "[t]he legislative history," we observed, "contains no indication that the Legislature distinguished in this regard between those

7

enhancements that have been executed and those that were stayed." (*Rhodius*, at p. 1066.)

## B.

Our decision in *Rhodius* resolved a conflict in the Courts of Appeal concerning prior prison term enhancements that had been imposed and stayed. We explained in a footnote that the application of section 1172.75 to punishment-stricken enhancements was not before us and so we did not address the question. (*Rhodius*, *supra*, 17 Cal.5th at p. 1066, fn. 2.) In now confronting that question, we consider whether the differences between punishment-stayed enhancements and punishment-stricken enhancements should lead us to a different conclusion than we reached in *Rhodius*.

The Attorney General believes the answer is yes. He argues that this case is distinguishable from *Rhodius* because, "[u]nlike a prior prison term enhancement with *stayed* punishment, an enhancement with *stricken* punishment lacks even the potential to result in any adverse consequence for the defendant." This distinction is relevant, he continues, for three main reasons. He first observes that it is odd to speak of "imposing" an enhancement that can have no adverse effects at all, and argues that it is not typical to refer to a punishment-stricken enhancement (as opposed to a stayed or executed enhancement) as having been "imposed." Second, he contends that other subdivisions of section 1172.75 reinforce this textual conclusion. He relies principally on section 1172.75(d)(1), which (as discussed) generally requires a court to impose a "lesser sentence" on resentencing. That "directive . . . makes no sense for punishment-stricken enhancements," the argument continues, because "[a]n enhancement with the punishment

*stricken* has no potential to *ever* increase a defendant's incarceration." Third, and finally, the Attorney General relies on the legislative history underlying section 1172.75. He argues that enactment of section 1172.75 was motivated in substantial part by a desire to reduce incarceration, and that "[r]esentencing for punishment-stricken enhancements . . . would not serve [this] articulated legislative purpose because such enhancements do not carry even a contingent 'prospect of additional incarceration.' "

Although there are certainly practical differences between staying punishment and striking punishment, the Attorney General's arguments do not persuade us that the differences warrant different treatment under section 1172.75(a). As an initial matter, it is not unusual to speak of a punishment-stricken enhancement as having been "imposed." We explained in *Rhodius* that, "as a matter of ordinary usage, an enhancement is 'imposed' when it is made part of a legally effective order." (*Rhodius, supra,* 17 Cal.5th at p. 1058.) Imposing a sentence on a criminal defendant has legal effect, and a true finding on a prior prison term allegation is a part of the sentencing order, even when the associated punishment is stricken. (See *People v. Fuentes* (2016) 1 Cal.5th 218, 225 [striking the punishment for an enhancement " ' "merely serves to prohibit a certain purpose for which the [allegation] may be used" ' "; it " 'does not "operate to defeat the factual finding of the truth of the [allegation]" ' "].) It follows that, as a matter of ordinary usage, an enhancement included in the sentence in a

criminal case may be "imposed" (§ 1172.75(a)) even if the punishment for that enhancement is stricken.

To the extent the Attorney General argues that the Legislature's concept of "imposed" could not have included punishment-stricken enhancements with no possible effects that could be redressed on resentencing, the argument fails because its premise is faulty. It is true that the potential effects are not the same as when an enhancement is stayed. (See *Rhodius*, *supra*, 17 Cal.5th at p. 1061 ["when a sentence is stayed, the trial court retains the ability to 'lift the stay and impose the term under certain circumstance[s], such as if an alternately imposed term is invalidated' "].) But that does not mean the potential effects are nonexistent, or that the Legislature would have believed them to be so.

Before enactment of section 1172.75(a), this court had "held that when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) The Courts of Appeal had similarly held that when a sentence has been recalled under certain provisions of the Penal Code, "the resentencing court has jurisdiction to modify *every* aspect of the sentence, and not just the portion subjected to the recall." (*Ibid*.) In *People v. Garner* (2016) 244 Cal.App.4th 1113, for example, the Court of Appeal held that a trial court that had stricken the punishment for prior prison term enhancements could impose punishment based on those enhancements when resentencing a defendant. (*Id*. at p. 1117.) The case law, in short, would have indicated to the Legislature that even punishment-stricken enhancements have

potential adverse consequences should a court ever conduct a resentencing to correct other errors in the defendant's sentence.

In his reply brief, the Attorney General clarifies that he does not dispute that, as a general matter, a court conducting resentencing can impose punishment based on an enhancement for which punishment had previously been stricken. He contends instead that, given the recent legislative changes we have described, a defendant faces no prospect of punishment for a prior prison term enhancement, because at resentencing, the enhancement could not be validly reimposed. Accordingly, the argument continues, a Legislature that understood the potential adverse consequences of a punishment-stricken enhancement would not have perceived the need to address them, because other principles of law would take care of any problems should they arise.

We addressed a very similar argument in *Rhodius*. As discussed, we held in *Rhodius* that a stayed enhancement was imposed even assuming that "if the defendant's sentence were reopened for other reasons, a court could not order the execution of a previously stayed" prior prison term enhancement. (*Rhodius*, *supra*, 17 Cal.5th at p. 1062.) Though we noted that the Attorney General's theory there was "not implausible," it struck us as unlikely that, without putting the matter more plainly, the Legislature "intended to exempt stayed enhancements from prompt invalidation and reexamination, instead choosing to put those matters off for another day." (*Id.* at pp. 1062–1063.) So too here. Even assuming a punishment-stricken enhancement could not be given effect *now* because of postsentencing legislation, the most natural understanding is

that the enhancement was still "imposed prior to January 1, 2020" within the meaning of section 1172.75(a).

Our discussion of legislative history in *Rhodius* bolsters this conclusion. We acknowledged in *Rhodius* that some of the legislative changes regarding prior prison term enhancements were made "in an effort to reduce the societal and fiscal burdens of incarceration." (*Rhodius*, *supra*, 17 Cal.5th at p. 1054.) Again, that understanding might suggest a narrower focus on eliminating only those enhancements that had already resulted in longer prison terms. But we also emphasized that "the legislative history suggests that the Legislature's goal was not only to reduce incarceration; the Legislature was also concerned, more generally, with 'advanc[ing] fairness in our criminal legal system.' " (*Id.* at p. 1065.) As mentioned, section 1172.75(a) was enacted in part to rectify what legislators understood to be the unfairness of prior prison term enhancements: treating the same crime differently based on a prior conviction for which the defendant has already been punished. (*Rhodius*, at p. 1065.) Invalidating punishment-stricken prior prison term enhancements is consistent with this goal.

In short, while there may be differences between stayed enhancements and punishment-stricken enhancements, the differences do not warrant a result different from the result in *Rhodius*. Espino's judgment contains a prior prison term enhancement. That enhancement was "imposed" (§ 1172.75(a)), and is now invalid, even though the punishment for the enhancement was stricken. Espino is therefore entitled to resentencing under section 1172.75, according to the procedures the statute sets forth. (*Rhodius*, *supra*, 17 Cal.5th at p. 1068.)

## III.

We affirm the judgment of the Court of Appeal.


**KRUGER, J.**


**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**EVANS, J.**
**DO, J.**<sup>*</sup>

---

\*      Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Espino

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 104 Cal.App.5th 188
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S286987
**Date Filed:** July 2, 2026

---

**Court:**  Superior
**County:**  Santa Clara
**Judges:**  William J. Monahan and Kenneth Paul Barnum

---

**Counsel:**

Robert L.S. Angres, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share, Bridget Billeter, Andrew Haney and Amit Kurlekar, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert L.S. Angres
Attorney at Law
642 Pollasky Avenue, Suite 110
Clovis, CA 93612
(559) 325-6602

Amit Kurlekar
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3810